

# OFFICE OF THE ATTORNEY GENERAL OF TEXAS

## AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

April 27, 1939

Mr. Warren McDonald
County Attorney,
Smith County
Tyler, Texas

Dear Sir:

Opinion No. O-464
Re: Purposes for which money col-
lected as fire insurance on
school building destroyed by
fire may be used.

This is in reply to your letter in which you state
that on "the 30th day of May, 1938, the Indian Creek Common
School District No. 26 was annexed to the Dixie Consolidated
Common School District No. 5 for rural high school purposes",
and you further state that since that time the school build-
ing used for elementary school purposes in the old Indian
Creek district has burned and two thousand dollars in insur-
ance on the building has been collected.

You ask the following two questions:

"Question No. 1. Can this money be used
in improving the church of said district or
for any other than school purposes?

"Question No. 2. Can the present Board
of Trustees of Dixie Rural High School Dis-
trict No. 5 under the present circumstances
take the $2000 in question and appropriate
it to the use and benefit for school pur-
poses of the entire grouped district?"

We will first endeavor to answer your question number
one, and in order to do this, we should consider the first two
sections of Article 2827 of the Revised Civil Statutes of Tex-
as, which reads as follows:

"The public free school funds shall not
be expended except for the following purposes:

"1.   The State and county available funds
shall be used exclusively for the payment of
teachers' and superintendents' salaries, fees
for taking the scholastic census, and interest
on money borrowed on short time to pay salaries
of teachers and superintendents, when these sal-
aries become due before the school funds for
the current year become available; provided
that no loans for the purpose of payment of
teachers shall be paid out of funds other than
→those for the then current year.

"2.   Local school funds from district taxes,
tuition fees of pupils not entitled to free tui-
tion and other local sources may be used for the
purposes enumerated for State and county funds
and for purchasing appliances and supplies, for
the payment of insurance premiums, janitors and
other employes, for buying school sites, buying,
building and repairing and renting school houses,
and for other purposes necessary in the conduct
of the public schools to be determined by the
Board of Trustees, the accounts and vouchers for
county districts to be approved by the county
superintendent; provided, that when the State
available school fund in any city or district is
sufficient to maintain the schools thereof in
any year for at least eight months, and leave a
surplus, such surplus may be expended for the
purposes mentioned herein."

This article was first passed in 1905, (Senate Bill 212,
Sec. 83, Acts 1905, 29th Leg.) and amended in 1919 (Senate Bill
209, Sec. 1, Acts 1919, 36th Leg.), and a reading of the origin-
al act shows that it was intended to apply to all school dis-
tricts.

Buying, building and renting of school houses must be
done with local funds, and not with the state and county avail-
able funds, according to the above quoted Article 2827; and
therefore we must conclude that Indian Creek elementary school
was erected with local funds.

When this school building, which was erected with local
funds, burned, we think the fire insurance money collected for
the building took the place of the building, and the insurance
money had the same status as that money had out of which the
building was originally erected. We have been unable to find
any Texas court decisions on this point, but we think a case

that sheds some light on the question is the case of Adams v. Helms, (Sup. Ct. Miss.) 95 Miss. 211, 48 So. 290, which concerned the fire insurance money on a courthouse that had burned, and in which the court said:

> * * * "If the property authorized to be insured is destroyed by fire, money collected on the insurance contract takes the place of the property so far as creditors of the county are concerned, and does not become a part of the general county fund, to be paid out on current expenses. It is a trust fund, to be used only for the purpose of replacing the property destroyed, so long as the county stands in need of the thing so destroyed. It required no order of the board to give this effect to the fund, * * *"

A similar rule is stated in Conley v. Rogers, (Sup.Ct.Ga.) 169 Ga. 85, 149 S.E. 699; and State vs. Board of Trustees, (Sup.Ct. Mont.) 91 Mont. 300, 7 Pac. 2d. 543.

We would not go so far as to hold that the money can only be used to build another school building, but we do believe that this money is impressed with a trust so that it can only be used for those purposes for which the original money out of which the building was built could have been used, to-wit, local purposes, as set out in Section 2 of Article 2827, quoted above. In 37 Tex. Jur. 968, it is said:

> * * *
>
> "School funds are not only impressed with a general education trust, but in many cases they are impressed with a special trust limiting their use to special educational spheres, and in such case, of course, they may be used for no other. * * *"

On the authority of spending money it is further stated in 37 Tex. Jur. 968, as follows:

> * * *
>
> "Powers of boards and officers over funds belonging to school districts, and the manner in which those powers shall be exercised, are prescribed by statute, and the course prescribed by law must be followed to the exclusion of all other methods. * * *"

Our answer to your first question is that the money collected as fire insurance on the school building destroyed by fire is a local school fund and can only be used for those school purposes enumerated in Section 2 of Article 2827.

We will now endeavor to answer your question number two, and in order to do this we should consider Chapter Nineteen A (Rural High Schools), Title 49, of the Revised Civil Statutes of Texas. We will not quote all of that chapter, but only parts of Articles 2922a and 2922b. Article 2922a reads in part as follows:

> "In each organized county in this State and in any county which shall hereafter be organized, the county school trustees shall have the authority to form one or more rural high school districts, by grouping contiguous common school districts having less than four hundred scholastic population and independent school districts having less than two hundred and fifty scholastic population for the purpose of establishing and operating rural high schools, provided also that the county school trustees may annex one or more common school districts or one or more independent school districts having less than two hundred and fifty scholastic population to a common school district having four hundred or more scholastic population or to an independent district having two hundred and fifty or more scholastic population upon the approval of the board of trustees of each school district affected; * * *"

Article 2922b reads in part as follows:

> "Rural high school districts as provided for in the preceding article shall be classed as common school districts, and all other districts, whether common or independent, composing such rural high school district shall be referred to in this Act as elementary school districts; * * *"

These statutes are, without question, the ones under which Indian Creek district was annexed to Dixie district for rural high school purposes.

We think your question is answered by the Court of Civil Appeals at Austin in its discussion of these Articles in the case of Chastain v. Mauldin, 32 S. W. (2d) 237, in which Chief Justice McClendon said:

"* * *

"If we are correct in the conclusion expressed below that the trustees of the Grosvenor district had no authority to remove the school building from the Panther district, then we are clear in the view that the district court has jurisdiction to enjoin the action, independently of whether an appeal has been taken from the action or threatened action of the Grosvenor board.

"* * * the grouping provided for does not have the effect of abolishing the several districts in the group. See also Limestone Board v. Wilson (Tex. Civ. App.) 5 S. W. (2d) 805. It merely groups them for high school purposes and places the grouped board in charge of all of the schools in the district, thus abolishing the several district boards, * * *

"* * * The trustees of the grouped district were invested with the power and charged with the duty of conducting schools and of administering all school property and funds of all the districts within the boundaries of the consolidated districts. But they did not have the right to divert property or funds of one district to another, or to the grouped district, * * * It follows that they did not have the power to remove the school building of the Panther Creek district to the Grosvenor district, as that would have been a diversion of the property from its proper purpose and object. The only consolidation affected by the grouping was that of the funds collected from taxation for general maintenance. The ownership of school buildings of the several districts remained the property of those districts and could not be divested or impaired by the trustees of the grouped district. We believe and so hold that in attempting to remove the school building the trustees were about to perform a wholly unauthorized act."

A holding to the same effect was made in the cases of County Board of School Trustees v. Wilson, 5 S. W. (2d) 805, and McPhail v. Tax Collector, 280 S. W. 260.

Our answer to your second question is that the Board of Trustees cannot appropriate for the use and benefit of the rural high school district created under Articles 2922a and 2922b the money collected as fire insurance on the burned school building which belonged to and was used as an elementary school by one of the common school districts composing the rural high school district.

Very truly yours

ATTORNEY GENERAL OF TEXAS

By Cecil C. Rotsch
Assistant

CCR-MR

APPROVED:

ATTORNEY GENERAL OF TEXAS

11-20-52